DANIEL J. YADRON, JR.
FEDERAL DEFENDERS OF SAN DIEGO
225 Broadway, Suite 900
San Diego, California 92101-5030
Telephone: (619) 234-8467
Facsimile: (619) 687-2666
danny_yadron@fd.org

Attorney for
GEOFFREY WILLIAM SILLS

## UNITED STATES DISTRICT COURT
## DISTRIC OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 1:21-cr-00040-TNM-6 |
| Plaintiff, | Hon. Trevor N. McFadden |
| v. | **REQUESTED EPLY IN SUPPORT OF SEALED MOTION FOR BAIL PENDING APPEAL** |
| GEOFFREY WILLIAM SILLS, | |
| Defendant. | |

## INTRODUCTION

The government agrees that the Court has the power to release Geoffrey Sills during the last five months of his sentence before his appeal becomes moot. ECF No. 823 at 4 n.1. Respectfully, the Court should exercise that power.

Mr. Sills remains eligible for release. Because even if Mr. Sills's conviction triggers 18 U.S.C. § 3143(b)(2), so long as he "meets the conditions of release set forth in section 3143(a)(1) or (b)(1), [he] may be ordered released, under appropriate conditions, by the judicial officer, if it is clearly shown that there are *exceptional reasons* why such person's detention would not be appropriate." 18 U.S.C. § 3145(c) (emphasis added). For reasons discussed in prior submissions and below, Mr. Sills meets that standard.

1

## DISCUSSION

**I.    The Court has the power to release Mr. Sills under § 3145(c).**

As the government acknowledges, Congress gave the Court the power to release Mr. Sills pursuant to § 3145(c). ECF No. 823 at 4 n.1. "[T]he plain text of section 3145(c) establishes that a district judge who has jurisdiction over a defendant's criminal case qualifies as the 'judicial officer' who may order the defendant released." *United States v. Wiggins*, 613 F. Supp. 3d 348, 354–55 (D.D.C. 2020) (Jackson, J.). For that and other reasons, "every court of appeals that has addressed the question has held that a district court judge may order a person released pursuant to 18 U.S.C. § 3145(c)."[1] *United States v. Harris*, 451 F. Supp. 3d 64, 69 (D.D.C. 2020).

Although the D.C. Circuit has not expressly addressed the issue in a published opinion, it has assumed as much in an unpublished disposition. *See United States v. Robinson*, 832 F. App'x 1, 2 (D.C. Cir. 2020) (unpublished). Judges in this District have exercised this authority without incident. *See, e.g.*, *Harris*, 451 F. Supp. 3d at 71.

Thus, so long as Mr. Sills (1) satisfies § 3143(b)(1)'s requirements and (2) shows "exceptional reasons why [his] detention would not be appropriate,"

---

[1] *United States v. Meister*, 744 F.3d 1236, 1239 (11th Cir. 2013); *United States v. Goforth*, 546 F.3d 712, 715 (4th Cir. 2008); *United States v. Christman*, 596 F.3d 870, 871 (6th Cir. 2010); *United States v. DiSomma*, 951 F.2d 494, 496 (2d Cir. 1991); *United States v. Herrera-Soto*, 961 F.2d 645, 647 (7th Cir. 1992); *United States v. Jones*, 979 F.2d 804, 806 (10th Cir. 1992); *United States v. Carr*, 947 F.2d 1239, 1240 (5th Cir. 1991); *United States v. Garcia*, 340 F.3d 1013, 1022 (9th Cir. 2003).

§ 3143(b)(2) does not bar his release. *See* § 3145(c). And as the foregoing demonstrates, Mr. Sills very much clears those hurdles.[2]

## II. Mr. Sills provides exceptional reasons for his release under § 3145(c).

Mr. Sills provides exceptional reasons for why his continued detention is inappropriate. Indeed, it is worth noting that the government makes no attempt to *show* that Mr. Sills does not meet that standard, other than to simply assert that he does not. ECF No. 823 at 6. Perhaps that is because Mr. Sills' case meets several of the criteria listed by other courts who have fleshed out what "exceptional" means in this context.

The statute's text does not "define[] the circumstances which may qualify as exceptional reasons permitting release." *United States v. DiSomma*, 951 F.2d 494, 497 (2d Cir. 1991). The legislative history is not much better. *Id.*

As then-Judge Jackson recognized, "[b]y adopting the term 'exceptional reasons' but declining to define it, it appears that 'Congress placed broad discretion in the district court to consider all the particular circumstances of the case before it and draw upon its broad experience with the mainsprings of human conduct.'" *Wiggins*, 613 F. Supp. 3d at 356 (quoting *Garcia*, 340 F.3d at 1018). Thus, "[a] 'wide range of factors may bear upon the [§ 3145(c)] analysis.'" *Harris*, 451 F. Supp. 3d at

---

[2] In light of the Court's order directing this filing's focus, Mr. Sills rests on his prior submissions to show that he "meets the conditions of release set forth in section 3143(a)(1) or (b)(1)," § 3145(c), i.e., that he "is not likely to flee or pose a danger to the safety of any other person or the community," § 3143(b)(1)(A), and "raises a substantial question of law or fact likely to result in . . . a reduced sentence to a term of imprisonment less than the total of the time already served plus the expected duration of the appeal process," § 3143(b)(1)(B)(iv). To the extent that the Court has additional concerns on those matters, the undersigned is happy to address them.

3

71 (quoting *Garcia*, 340 F.3d at 1018). Indeed, there is "no limit on the range of matters the district court may consider." *Garcia*, 340 F.3d at 1018–19.

That said, appellate courts have highlighted a few factors that are worth considering. One guiding light is to consider whether a person's detention furthers Congress's intent to mitigate the risks of demonstrably dangerous people rejoining the public before serving their sentences. Thus, "for example, one exceptional circumstance that might justify release under § 3145(c) would be that the defendant's criminal conduct was aberrational." *Id.* at 1019. After all, "a defendant with no prior history of violence may have acted violently, but uncharacteristically, in reaction to an unusually provocative circumstance." *Id.* That makes for an exceptional reason because "[s]uch a defendant may be guilty of a violent crime, and yet may not be the type of violent person for whom Congress intended the mandatory detention rule." *Id.* And "if the district court finds that the defendant led an exemplary life prior to his offense and would be likely to continue to contribute to society significantly if allowed to remain free on bail, these factors would militate in favor of finding exceptional reasons." *Id.*

Another similar exceptional reason for release is that a person's sentence of imprisonment is "very short." *Id.* That is because with short sentences "the primary purpose of the Mandatory Detention Act—to incapacitate violent people—is only weakly implicated." *Id.* After all, "regardless of whether the defendant is released pending appeal, he will soon be free." *Id.* Furthermore, "the defendant could be forced to serve most or all of his sentence before his appeal has been decided." *Id.*;

4

*see also United States v. McManus*, 651 F. Supp. 382, 384 (D. Md. 1987) ("There seems little point to an appeal if the defendant will serve his time before a decision is rendered.").

Numerous courts also agree that "[t]he nature of the defendant's arguments on appeal may also be considered by the district court in determining whether exceptional reasons exist." *Id.* at 1020. For example, "[a] substantial question of law sufficient to satisfy the criteria for release required of any convicted person, in a remarkable or unique factual context, may render detention pending appeal inappropriate." *United States v. Herrera-Soto*, 961 F.2d 645, 647 (7th Cir. 1992). Or "[w]hen there appears to be an unusually strong chance that the defendant will succeed in obtaining a reversal of his conviction on appeal[,] he may be able to demonstrate exceptional reasons for delaying the commencement of his sentence."[3] *Garcia*, 340 F.3d at 1020.

Mr. Sills meets each of these criteria. First, as discussed in his prior submissions, his conduct here truly was "aberrational." *Garcia*, 340 F.3d at 1019. Mr. Sills had zero criminal history prior to this incident. Indeed, by all accounts, he "led an exemplary life prior to his offense." *Id.* He worked remotely for a government contractor. He helped his mother around the house given his father's declining health. If released, he would return to helping his mother and begin work in as tech support at Wayne Enterprises LLC, a construction and real-estate firm in

---

[3] Courts recognize that some of these factors overlap with the threshold questions for release under § 3143(b). *See, e.g.*, *Garcia*, 340 F.3d at 1021 n.5. That does not make for double counting because, for these factors to arise to the level of exceptional reasons, there must be a "higher standard of certainty" that they exist than is required under § 3143(b). *Id.* at 1021 n.6.

Richmond. *See* ECF No. 584-1 at 1. Suffice to say that Mr. Sills—like many Americans before the Court and others in the District—acted "uncharacteristically, in reaction to an unusually provocative circumstance" on January 6. *Garcia*, 340 F.3d at 1019. Mr. Sills does not mean to justify his conduct, he simply wishes to make clear that the person he was in the heat of January 6 is not the person that he is today. He thus is not the type of "person for whom Congress intended the mandatory detention rule." *Id.*

Relatedly, the less-than five months left on Mr. Sills's sentence provides another exceptional reason for release. Regardless of any action by this Court or the Court of Appeals, Mr. Sills will be released February 25, 2025. *Find an Inmate*, Bureau of Prisons, https://www.bop.gov/mobile/find_inmate/byname.jsp (last visited Oct. 7, 2024). That creates the exceptional reason that § 3143(b)(2) is doing little, if any work: Mr. Sills "will soon be free." *Garcia*, 340 F.3d at 1019. Not at a halfway house, but at home subject to the Court's conditions of supervised release. Indeed, given the date of filing, this motion represents little more than a request for Mr. Sills to celebrate Thanksgiving and Christmas at home. That would be a welcome development. Because Mr. Sills served so much of his sentence, he has repeatedly demonstrated his rehabilitation over the last three years. That includes his heartfelt allocution to the Court at sentencing. It also includes his appetite for programming when within the BOP. Indeed, there is so little time left on his sentence that but for this motion, there might "seem[] little point to an appeal." *McManus*, 651 F. Supp. at 384.

That result is untenable given the strength of Mr. Sills's appeal. Indeed, the government already has informed the undersigned that it will not defend his conviction under § 1512(c)(2) on appeal. That means, regardless of how the D.C. Circuit rules on any other appellate issues, Mr. Sills will almost certainly get a remand for resentencing. *See United States v. Wilson*, 605 F.3d 985, 1032 (D.C. Cir. 2010) (holding that the reversal of a single count in a multicount conviction warrants a remand for resentencing even if it is merely possible that the count affected the sentence). That creates an absurd situation where the U.S. Supreme Court has held that a person was unlawfully convicted under a statute, yet that person does not even get the chance—just the chance—of a reduced sentence. And although the undersigned must follow the Court's order to address "only the 18 U.S.C. § 3143(b)(2) issue" here, it is worth noting that the government's latest submission does not undermine that Mr. Sills at least raises a "substantial question" that, if resolved in his favor, would mean that his "sentence would likely be reduced to a term of imprisonment that is less than what he will have served by the time his appeal is over." *United States v. Seefried*, —F. Supp. 3d—, No. 1:21-CR-00287 (TNM), 2024 WL 1299371, at *3–4 (D.D.C. Mar. 26, 2024) (quoting *United States v. Perholtz*, 836 F.2d 554, 555 (D.C. Cir. 1987) (per curiam)).

There is one last consideration. If Mr. Sills's prosecution had been a run-of-the-mill endeavor, his appeal may well have been resolved by now, removing the need for this motion. But as the Court knows well, this was no run-of-the-mill prosecution. Mr. Sills was one of more than 1000 people charged for their actions on

January 6, 2021. The mass prosecution has caused unprecedented backlogs that prevented him from vindicating his rights—rights he maintains even as a person rightfully convicted of some offenses. Mr. Sills indeed could not even begin this appeal in earnest until the Supreme Court resolved *Fischer*. He then had to wait longer still while the government decided whether it would continue to defend his conviction under § 1512(c)(2) in light of the Supreme Court's ruling. Meanwhile, for reasons that remain unclear, Mr. Sills has not been able to obtain space in a halfway house despite his exemplary record at the BOP.

Mr. Sills understands that what he did last January 6 is not the way to register discontent with government. He deeply regrets the person that he became outside the Capitol during those critical minutes that caused him to spend years in a cell. But it also is worth recognizing Mr. Sills's inability to vindicate any of his rights despite an appeal that the government concedes—in part—to be meritorious. This Court has the unique power to prevent that scenario. Respectfully, it should.

## CONCLUSION

Mr. Sills respectfully requests that the Court order him released, subject to already imposed conditions of supervised release, pending his appeal as soon as practicable.

Respectfully submitted,

Dated: October 7, 2024

*s/ Daniel J. Yadron, Jr.*

Federal Defenders of San Diego, Inc.
Attorney for Geoffrey William Sills

9